## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**JESSICA SMITH, CORY SMITH,**
**MONICA CONTRERAS, and**
**RUDY A. CONTRERAS,**

    **Plaintiffs,**

**v.**                                                                                       **No. 21-cv-1084 MV/SMV**

**ALAMOGORDO POLICE DEPARTMENT and**
**CITY OF ALAMOGORDO,**
    **Defendants**.[1]

### MAGISTRATE JUDGE'S
### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION
### TO DISMISS FOR FAILURE TO STATE A CLAIM

THIS MATTER comes before me on Defendant's Motion to Dismiss the Complaint for Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6), filed June 3, 2022. [Doc. 17]. On October 6, 2022, the Honorable Martha Vázquez, Senior United States District Judge, referred this matter to me for analysis and a recommended disposition. [Doc. 26]. I find that the Amended Complaint does not state a claim for relief and that any amendment would be futile because the state law tort claims are barred by the statute of limitations and the § 1983 claims were extinguished by Donovan Contreras's death.

### BACKGROUND

Plaintiff Rudy Contreras filed the original Complaint against the Alamogordo Police Department in the Twelfth Judicial District Court for the State of New Mexico on October 6, 2021.

---

[1] Plaintiffs originally named only the Alamogordo Police Department as defendant. [Doc. 1-1]. Plaintiffs subsequently named the City of Alamogordo as a defendant in their May 11, 2022, Amended Complaint, which supersedes the original Complaint as the controlling pleading. [Doc. 15].

[Doc. 1-1]. He then filed an amended Complaint two days later, joined by Plaintiffs Jessica Smith, Cory Smith, and Monica Contreras. [Doc. 1-2]. Alamogordo Police Department removed the matter to this Court on November 8, 2021, and filed the first Motion to Dismiss for Failure to State a Claim on November 15, 2021. [Docs. 1, 4]. On April 28, 2022, I recommended that the Complaint be dismissed for failure to state a claim, but that Plaintiffs be allowed to amend. [Doc. 14]. Shortly thereafter, Plaintiffs filed the amended Complaint at issue ("Amended Complaint"), adding the City of Alamogordo ("Defendant") as the proper defendant. [Doc. 15]. Defendant filed a second Motion to Dismiss on June 3, 2022. [Doc. 17]. United States District Judge Martha Vazquez adopted my Proposed Findings and Recommended Disposition and found the first Motion to Dismiss moot due to Plaintiffs' Amended Complaint. [Doc 19]. I consider Plaintiffs' May 11, 2022, Amended Complaint here.

In the Amended Complaint, Plaintiffs assert various claims under the New Mexico and Federal Constitutions against Detective Diana Chavez and Raymond Brown as employees of Defendant (though not as named defendants). *See* [Doc. 15] at 14−19, 35−39.  Plaintiffs seek damages against the City of Alamogordo for alleged constitutional violations which they claim caused the wrongful death of Donovan Contreras, Plaintiff Rudy Contreras's grandson and Plaintiff Jessica Smith's son. *Id.* at 2. Plaintiffs essentially allege that Detective Chavez unlawfully investigated Mr. Contreras for possession of a controlled substance, which led to confidential informants targeting Mr. Contreras and eventually killing him. *Id.* at 19. Plaintiffs further allege that Raymond Brown established "a false narrative of suicide" and failed to properly investigate Mr. Contreras's death as a possible homicide. *Id.* at 24, 25.

### The First Prosecution[2]

The allegations against Det. Chavez stem from her investigations supporting the two prosecutions of Mr. Contreras for possession of a controlled substance. *Id.* at 3−7, 8−12. Plaintiffs assert that Det. Chavez charged Mr. Contreras "with ownership of a wallet that contained a folded dollar bill with cocaine inside, which [Det.] Chavez recovered on September 22, 2018, from 907 Arapaho Trail in Alamogordo, NM and falsely reported that the wallet had Donovan Contreras's identification inside." *Id.* at 4. He reportedly told Det. Chavez that she "must be mistaken about his wallet because he had his wallet on him . . . and show[ed] her his identification." *Id.*

On November 16, 2018, Det. Chavez executed an affidavit for an arrest warrant for Mr. Contreras, despite having "clear knowledge that the wallet and the dollar bills with cocaine did not belong to Donovan Contreras." *Id.* 5−6. Consequently, on November 20, 2018, Det. Chavez "falsely charged[] and wrongfully arrested Donovan Contreras. . . [for] possession of a controlled substance, cocaine." *Id.* at 6. Mr. Contreras was held in custody on a five thousand dollar cash bond. *Id.* at 6. Plaintiffs contend that "[Det.] Chavez generated [two] lab reports, on latent prints and DNA, to examine cocaine evidence recovered on 9/22/18, specifically targeting [Mr] Contreras" who "[was] not a suspect on either report, and . . . [was] exonerated by both reports." *Id.* at 6. On January 9, 2019, a magistrate judge found no probable cause for the possession charge, *id.* at 7, and the case against Mr. Contreras was dismissed. *Id.*

### The Second Prosecution

After the first possession charge was dismissed, Det. Chavez allegedly "generate[d] a [third] lab report on controlled substances" dated February 9, 2019. *Id.* at 8. Plaintiffs allege "[t]his

---

[2] I will not restate all facts alleged in the Amended Complaint, but only those relevant to my analysis.

lab report on controlled substances was clearly targeting Donovan Contreras with fabricated cocaine evidence being reported against him." *Id.*  A grand jury target letter was issued to Mr. Contreras on February 20, 2019. *Id.* Plaintiffs claim that on March 19, 2019, Det. Chavez "falsely accuse[d] Donovan Contreras of possession of a controlled substance, cocaine, with false and fabricated evidence in order to file a grand jury indictment and to get a false charge or possession of a controlled substance against Donovan Contreras for the [second time]." *Id.* at 9. Mr. Contreras rejected a plea deal for the possession charge on June 17, 2019. *Id.* He died prior to trial on July 12, 2019, from a gunshot wound to the head. *Id.* A "Nolle Prosequi due to Death" was filed on July 17, 2019.[3] Based on these allegations with respect to Det. Chavez, Plaintiffs bring sixteen claims under both state and federal constitutions and criminal statutes.[4] *Id.* at 14−19.

### Allegedly Deficient Investigation

Plaintiffs allege some type of cause-of-death cover-up between the Alamogordo Police Department and the medical investigator to push a "narrative of suicide" instead of investigating Mr. Contreras' death as a possible homicide. *Id.* at 24. They heavily emphasize that Mr. Contreras was left-handed yet died of a gunshot wound to the right side of his head. *Id.* at 20. Plaintiffs report that Mr. Contreras's death was immediately considered a suicide. *Id.* at 22. Plaintiffs claim that Raymond Brown told them that he was investigating the death as a homicide *id* at 23, while at the same time he was telling the pathologists who had performed the autopsy that he "saw nothing

---

[3] I take judicial notice of the record in Mr. Contreras's state court criminal case for possession of a controlled substance, *State of New Mexico v. Donovan M Contreras*, D-1215-CR-201900146. *See* Fed. R. Civ. P. 201. I refer to this cause number as the "second prosecution."

[4] I note that Plaintiffs cite state and federal criminal statutes in conjunction with the New Mexico and United States Constitutions as the basis for some of their constitutional claims. Because Plaintiffs are pro se, I will liberally construe the criminal statutory citation as civil rights claims. *See* [Doc. 15] at 14−19, 35−38. I note that only prosecutors can bring criminal charges. *See Becker v. Kroll*, 494 F.3d 904, 924 (10th Cir. 2007).

other than suicide" so that the OMI could rule out homicide as the cause of death. *Id.* Plaintiffs also describe further inconsistencies in various reports they requested on Mr. Contreras's death. *Id.* at 27−30. In sum, Plaintiffs contend that Raymond Brown "intentionally failed from the initiation of his investigation to follow 'further leads' that hold factual matter pertaining to his investigation into Donovan Contreras' death." *Id.* at 33. Based on these allegations with respect to Raymond Brown, Plaintiffs bring fourteen claims under both state and federal constitutions and criminal statutes. *Id.* at 35−38.

## Briefing

Defendant moves to dismiss the Amended Complaint for failure to state a claim under Rule 12(b)(6). [Doc. 17]. Defendant argues that Plaintiffs' claims are time-barred under the New Mexico Tort Claims Act's ("NMTCA") two-year statute of limitations. *Id.* at 4. Defendant further contends that Plaintiffs cannot raise § 1983 constitutional claims against an individual officer on a deceased person's behalf unless that officer actually caused the decedent's death. *Id.* at 5−6. Defendant also argues that to the extent Plaintiffs allege municipal liability claims against the City of Alamogordo, the claim fails because it lacks § 1983 allegations against an individual officer or employee. *Id.* at 6. Finally, Defendant asserts that Plaintiffs cannot properly bring claims on Mr. Contreras's behalf since none of them has been appointed as personal representative of his estate. *Id.* at 7.

In response, Plaintiffs contend that fraudulent concealment should apply to toll the statute of limitations:

> City of Alamogordo employee Diana Chavez, while under color of law, concealed and omitted her false charges and wrongful imprisonment information on Donovan Contreras on 11/20/18 and false information on a grand jury indictment she filed against Donovan Contreras on 3/19/19 from a City of Alamogordo police report

5

dated 11/16/18 that Plaintiffs received on 3/5/19 from the City of Alamogordo police records department. *Plaintiffs discovered this fraudulent concealment in another City of Alamogordo police report dated 2/26/19 received by Plaintiffs on 11/25/19* . . . [t]he *time of discovery, 11/25/19, of this fraudulent concealment clearly tolls the statute of limitations* under the New Mexico Tort Claims Act (NMTCA)."

[Doc. 20] at 2−3 (emphasis added).

Plaintiffs also urge that the Amended Complaint "must not be dismissed because the substance of the subject matter . . . is substantially sufficient." *Id.* at 13.

In reply, Defendant argues that fraudulent concealment only applies to "a narrow subset of claims that does not include constitutional claims or any other torts" raised in the Amended Complaint. [Doc. 21] at 1. Defendant explains that fraudulent concealment has been found to toll the two-year NMTCA statute of limitations only in the medical malpractice context. *Id.* at 3, 4. Defendant also re-emphasizes its previous arguments. *Id.* at 5.

## LEGAL STANDARDS

### I.   <u>Dismissal Standards</u>

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This means that the plaintiff must plead facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," because "'courts are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). In sum, "a Rule 12(b)(6) motion tests the sufficiency of the [factual] allegations within

the four corners of the complaint after taking those allegations as true[,]" *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994), and "constru[ing] them in the light most favorable to the plaintiff." *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015) (quoting *Grossman v. Novell, Inc.,* 120 F.3d 1112, 1118 (10th Cir. 1997)).

    **II.**    <u>**Amendment Considerations**</u>

    Amendments to pleadings are generally governed by Fed. R. Civ. P. 15. Except where amendment is granted as a matter of course, a party may amend its pleading only with the consent of the opposing party or the court's leave. Fed. R. Civ. P. 15(a). "[T]he court should freely give leave [to amend a complaint] where justice so requires." *Id.* However, a court may deny leave to amend on the basis of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001).

    Amendment is futile if the pleading "as amended, would be subject to dismissal." *Fields v. City of Tulsa*, 753 F.3d 1000, 1012 (10th Cir. 2014). "The purpose of [Rule 15(a)] is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (internal quotation marks omitted). The Tenth Circuit has directed district courts to grant leave to amend "when doing so would yield a meritorious claim." *Curley*, 246 F.3d at 1284. The decision whether to grant leave to amend is left to the discretion of the district court. *See, e.g., Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993); *Foman*, 371 U.S. at 182.

### III.   Pro Se Litigant Considerations

Because Plaintiffs proceeds pro se, I construe their filings liberally. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007). However, courts must apply the same procedural rules and legal standards applicable to filings drafted by attorneys. *Hall*, 935 F.2d at 1110. If defects in the complaint are found, "pro se litigants are to be given reasonable opportunity to remedy" such defects. *Id.* at 1110 n.3. Hence, "[d]ismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged[,] and it would be futile to give [the plaintiff] an opportunity to amend." *Curley*, 246 F.3d at 1281. A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall*, 935 F.2d at 1110. The Court does not act as advocate for pro se litigants. *Id.*; *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994).

### IV.   Statute of Limitations

In *Bernheisel v. CYFD*, Judge Kenneth Gonzales succinctly expressed the reasons why statutes of limitations are so important in our legal system:

> The Court acknowledges that statutes of limitations could feel technical or even arbitrary to the non-lawyer. Nonetheless, the law imposes strict time limits on lawsuits for good reason. Imagine the criminal context. Statutes of limitation mean that the government can only charge and prosecute someone for a certain amount of time after a crime has been committed . . . Returning to the civil context, like the case now before the Court, the reasoning is much the same. The law supposes that timely lawsuits are good because they protect defendants from having to defend themselves in perpetuity. The underlying purpose of statutes of limitation is to prevent the unexpected enforcement of stale claims where a defendant might be "thrown off their guard" by a plaintiff's failure to bring a lawsuit sooner.

*Bernheisel v. CYFD*, No. 21-CV-00037 KG/SCY, 2022 WL 1262215, at *2 (D.N.M. Apr. 28, 2022) (internal citations and quotation mark omitted). Consequently, "courts like this one consider

it critical to enforce the time limits placed on lawsuits." *Id.* While a statute of limitations is generally raised as an affirmative defense, it may be decided on a 12(b)(6) motion to dismiss "when the dates given in the complaint make clear that the right sued upon has been extinguished." *Id.*

Moreover, the Tenth Circuit has narrowly construed equitable tolling exceptions. *Carpenter v. New Mexico*, No. CV 10-0112 JB/WDS, 2010 WL 2292890, at *7 (D.N.M. May 26, 2010). "New Mexico places the onus of justifying equitable tolling squarely on the plaintiff's shoulders." *Sweesy v. Sun Life Assurance Co. of Canada (USA)*, 643 F. App'x 785, 798 (10th Cir. 2016). Thus, "[t]he court undertakes a case-by-case inquiry as to whether the plaintiff has established (1) that []he has been pursuing h[is] rights diligently, and (2) that some extraordinary circumstance stood in h[is] way." *Id.* (internal quotation marks and citation omitted). Specifically, fraudulent concealment is an equitable doctrine that may function to toll the statute of limitations. *JM through Foley v. New Mexico Dep't of Health*, No. CV 07-0604 RB/ACT, 2009 WL 10698495, at *2 (D.N.M. Mar. 5, 2009) (internal citation omitted).

## ANALYSIS

### I.    NMTCA Claims.

The NMTCA grants all state government entities and public employees general immunity from actions in tort, but waives that immunity in certain specified circumstances. *Rico-Reyes v. New Mexico*, 503 F. Supp. 3d 1055, 1058 (D.N.M. 2020). Like § 1983, the NMTCA provides a mechanism to sue under the New Mexico Constitution for certain "constitutional torts." *Id.* However, a person may not sue the state for violation of a state constitutional right without a waiver of NMTCA immunity. *Id.* (internal citation omitted). NMTCA immunity does not apply to liability for wrongful death, false imprisonment, false arrest, malicious prosecution, abuse of

process, libel, slander, failure to comply with legal or statutory duties, or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico, among others. *Id.*; *see* N.M. Stat. § 41-4-12 (1978).

The statute of limitations for NMTCA claims is two years. *Rico-Reyes*, 503 F. Supp. 3d at 1058 (citing *DeVargas v. State ex rel. N.M. Dep't of Corr.*, 1982-NMSC-025, ¶ 5 (1982)). "A plaintiff's cause of action accrues when he or she understands the nature of his or her injury; that is, when the plaintiff knows or with reasonable diligence should have known of the injury and its cause." *Id.* at 1060 (citing *Maestas v. Zager*, 2008-NMSC-003, ¶ 22 (2007)). The cause of action may accrue regardless of whether the plaintiff is aware of the full extent of his injury. *Id.*

Plaintiffs brings enumerated NMTCA claims of false arrest, false imprisonment, malicious prosecution, and failure to comply with legal or statutory duties against Det. Chavez. [Doc. 15] at 15, 16.  Plaintiffs do not bring any enumerated NMTCA claims against Raymond Brown. *See id.* at 35−38. Plaintiffs also appear to assert claims including falsification of evidence, perjury, and tampering against Det. Chavez, which I will construe as falling under the residuary provision of § 41-4-12 covering "any other deprivation of any rights, privileges or immunities."[5] *See* N.M. Stat. § 41-4-12 (1978). Because the statute of limitations for NMTCA claims is two years, I find that all Plaintiffs' state-law constitutional claims are time-barred for the reasons stated below.

---

[5] I note that Plaintiffs also allege claims relating to excessive bail, double jeopardy, fourteenth amendment equal protection, slander, conspiracy, misconduct, entrapment, and unfair investigation (among others). *See* [Doc. 15] at 14−19, 35−38. In my meticulous review of the Amended Complaint's alleged facts, I consider these claims waived as Plaintiffs did not provide specific, plausible facts to support them, and even if they had, I am not persuaded that these are actionable claims. Similarly, Plaintiffs do not allege any § 1983 municipality liability claims, and even if they had, I am not persuaded they would be actionable.

A.  Plaintiffs' False Imprisonment Claim is Untimely.

A false imprisonment claim accrues on the last day on which a plaintiff alleges he was falsely imprisoned.[6] *Gose v. Bd. of Cnty. Comm'rs of Cnty. of McKinley*, 727 F. Supp. 2d 1256, 1261 (D.N.M. 2010).; *Maho v. Hankins*, No. CV 19-182 KK/SCY, 2019 WL 6781207, at *6 (D.N.M. Dec. 12, 2019). Plaintiffs' false imprisonment claim is premised on Mr. Contreras's allegedly unlawful incarceration from November 20, 2018 (the day he was arrested for possession), to January 9, 2019 (the day the magistrate judge dismissed the possession charge for lack of probable cause). [Doc. 15] at 6−7. I infer that Mr. Contreras remained in custody during this time because he could not afford to post the five thousand dollar cash-only bond. *Id.* at 6. Because January 9, 2019, is the last conceivable date on which Mr. Contreras was falsely imprisoned, that is the date of accrual for the false imprisonment claim. Considering that Plaintiffs did not bring this claim within two years of January 9, 2019[7], the false imprisonment claim is untimely and must be dismissed.[8]

B.  Plaintiffs' Malicious Abuse of Process Claim is Untimely.

Although Plaintiffs do not specifically allege a malicious prosecution claim under New Mexico law, many factual allegations within the Amended Complaint sound in malicious prosecution. *See generally* [Doc. 15] at 3−13. New Mexico combines the torts of abuse of process and malicious prosecution into the single tort of malicious abuse of process. *Mata v. Anderson*,

---

[6] False arrest and false imprisonment claims overlap as a false arrest is one way of committing false imprisonment. *Gose*, 727 F. Supp. 2d at 1260.
[7] Instead, the original Complaint was filed on October 1, 2021. [Doc. 1-1] at 1. Thus, Plaintiffs' claim is approximately ten months late.
[8] Plaintiffs do not allege that Mr. Contreras was incarcerated on the second prosecution. Even if they had, the latest occurrence date would be March 21, 2019, the date Plaintiff was given a $5,000 unsecured bond once the case was bound over after indictment. *See State of New Mexico v. Donovan M Contreras*, D-1215-CR-201900146.

685 F. Supp. 2d 1223, 1254 (D.N.M. 2010), *aff'd*, 635 F.3d 1250 (10th Cir. 2011) (internal citation omitted). The elements of malicious abuse of process are: "(1) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages." *Maho*, 2019 WL 6781207, at *7 (citing *Durham v. Guest*, 2009-NMSC-007, ¶ 29). An improper use of process may be shown by (1) filing a complaint without probable cause, or (2) an irregularity or impropriety suggesting extortion, delay, or harassment, or other conduct formerly actionable under the tort of abuse of process. *Durham v. Guest*, 2009-NMSC-007, ¶ 29 (internal quotation and citation omitted). A malicious abuse of process claim either "accrues immediately upon the improper use of process," *Mata*, 685 F. Supp. 2d at 1254-55, or at latest accrues when the proceedings terminated in the plaintiff's favor. *Maho*, 2019 WL 6781207, at *7.

Plaintiffs appear to allege several dates on which they argue Det. Chavez improperly used process in a judicial proceeding against Mr. Contreras. First, Plaintiffs allege Mr. Contreras was improperly arrested on November 20, 2018, pursuant to an unlawful arrest warrant. [Doc. 15] at 6. Second, the first prosecution was dismissed for lack of probable cause on January 9, 2019. *Id.* at 7. Third, they allege the February 20, 2019, grand jury target letter began another improper judicial proceeding *Id.* at 8. Finally, the dismissal date of July, 17, 2019, marks the final date on which Plaintiffs could conceivably argue improper use of process occurred in a judicial proceeding. *Id.* at 10; *State of New Mexico v. Donovan M Contreras*, D-1215-CR-201900146.

I need not determine whether Plaintiffs' malicious abuse of process claim accrues immediately upon the improper use of process or upon favorable termination of the process. *See Maho*, 2019 WL 6781207, at *7. Plaintiffs' claims are untimely under either circumstance. *See id.*

Assuming that the latest malicious abuse of process claim accrued when the second prosecution terminated in Mr. Contreras's favor on July 17, 2019, Plaintiffs' cause of action is still untimely under the two-year NMTCA statute of limitations.

C.  Plaintiffs' Failure-to-Comply-with-Duties-Established-by-Statute-or-Law Claim is Untimely.

Plaintiffs allege that Det. Chavez "breached her oath of office by failing to faithfully and impartially discharge the duties of her office by engaging in illegal activities against Donovan." [Doc. 15] at 14. Plaintiffs do not specify which duties they believe she failed to discharge, nor do they elaborate on which allegedly illegal activities compromised those duties. *See Rowland v. Bd. of Cnty. Commissioners for Cnty. of Curry*, No. CV 20-646 GBW/SMV, 2020 WL 5705912, at *3, *4 (D.N.M. Sept. 24, 2020) (requiring a plaintiff to identify a particular duty in law or statute that was breached). Nevertheless, I infer that the pertinent dates discussed above remain the same under this claim, culminating with Mr. Contreras's death on July 12, 2019. Consequently, the two-year statute of limitations period in which Plaintiffs could have timely brought this claim expired before they filed their original complaint.

D.  All Residual NMTCA Claims are Untimely.

Plaintiffs also bring claims of evidence tampering, perjury, and falsification of records against Det. Chavez. [Doc. 15] at 14−16. I will liberally construe these as falling under the section of § 41-4-12 which waives immunity for "any other deprivation of any rights, privileges, or immunities secured by the constitution and laws of the United States or New Mexico when cause by law enforcement officers while acting in the scope of their duties." N.M. Stat. § 41-4-12 (1978). Regarding evidence tampering, Plaintiffs state, "Det. Diana Chavez engaged in tampering with evidence which she recovered on 9/22/18 from 907 Arapaho Trail in Alamogordo, [NM]." [Doc.

15] at 15. Plaintiffs do not provide dates for the alleged perjury or falsification of records. However, I note that these claims arise from the same facts and dates as the previous claims analyzed above. Thus, I find that these claims are also time-barred by the two-year NMTCA statute of limitations and must be dismissed.[9]

     E.  Fraudulent concealment does not apply to salvage Plaintiffs' untimely claims.

     Plaintiffs argue that fraudulent concealment should stop the statute of limitations clock from running and preserve the claims as timely. *See* [Doc. 20] at 1−3. Defendant replies that fraudulent concealment has only been applied to toll the NMTCA statute of limitations in the context of medical malpractice against public providers. [Doc. 21] at 4. To toll a statute of limitations on the basis of fraudulent concealment, a plaintiff must show all of the following: "(i) the other party engaged in conduct amounting to intentional false representation or concealment of material facts; (ii) the injured party reasonably relied on the other party and the concealment was successful; and (iii) the injured party did not know, and through the exercise of reasonable diligence, could or should not have known the true facts giving rise to a cause of action." *Mata*, F. Supp. 2d at 1282.

     This Court declines to apply a novel application of fraudulent concealment to the facts of this case. However, even if I were to inclined to do so, I would not find that Plaintiffs' frustration with bureaucratic inefficiency in producing records and inaccuracy in keeping records rises to the level of intentional false representation or concealment of material facts required for the first

---

[9] Plaintiffs do not provide specific dates and facts as to the claims against Raymond Brown, but rather state that he acted unlawfully "between July 12, 2019 and June 16, 2020." [Doc. 15] at 34. I consider these claims waived because despite the opportunity to amend, Plaintiffs still fail to provide more than conclusory allegations.

element. *See* [Doc. 15] at 39. Thus, the I find that fraudulent concealment did not toll the statute of limitations, and that Plaintiffs' NMTCA claims are still untimely.

**II.      § 1983 Claims**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *Chavez v. Cnty. of Bernalillo*, 3 F. Supp. 3d 936, 976 (D.N.M. 2014) (internal citation omitted). Plaintiffs allege First Amendment, Fourth Amendment, Fifth Amendment, Eighth Amendment, and Fourteenth Amendment violations, along with perjury, tampering with evidence, and deprivations of rights, privileges, and immunities under federal criminal statutes and the federal Constitution. [Doc. 15] at 16−18, 37−40. I find that Plaintiffs' § 1983 claims are barred under New Mexico's survivorship statute and case law applying it to intentional torts as explained below.

Defendant argues that Plaintiffs' § 1983 claims do not survive Mr. Contreras's death under New Mexico's survival statute. [Doc. 17] at 5.  In support, Defendant cites the Tenth Circuit case *Oliveros v. Mitchell* for the proposition that "[i]n New Mexico, Plaintiffs cannot raise state or federal constitutional claims against individual officers on behalf of a deceased party unless the officer caused the deceased party's death." *Id.* (citing *Oliveros v. Mitchell*, 449 F.3d 1091, 1092 (10th Cir. 2006)). I find that Plaintiffs' § 1983 do not survive Mr. Contreras's death and must be dismissed.

A.  Intentional torts and § 1983 claims do not survive the plaintiff's[10] death under
New Mexico law.

In *Oliveros*, the original plaintiff was shot in the hip by a police handgun during an arrest.

*Oliveros*, 449 F.3d at 1092. Six months after the arrest incident, the plaintiff died in a swimming

accident unrelated to the shooting. *Id.* The plaintiff's personal representative thereafter sued the

City of Farmington and its officers based on the shooting for Fourth and Fourteenth Amendment

violations, as well assault, battery, and negligence. *Id.* The claims were brought under § 1983 and

state tort law. The Tenth Circuit affirmed the district court's ruling that any claims based on the

defendants' alleged intentional misconduct in the shooting did not survive the death of the plaintiff

because the death was unrelated to the shooting. *Id.* at 1094.

In reaching this conclusion, the Tenth Circuit first analyzed the common law rule and

New Mexico's survival statute. *Id.* The old common law rule mandated that personal tort actions

died when either the plaintiff or defendant died. *Id.* However, New Mexico's survival statute

altered the common law rule by making some exceptions, providing that:

> In addition to the causes of action which survive at common law, causes of action
> for mesne profits, or for an injury to real or personal estate, or for any deceit or
> fraud, shall also survive, and the action may be brought, notwithstanding the death
> of the person entitled or liable to the same. *The cause of action for wrongful death
> and the cause of action for personal injuries, shall survive the death of the party
> responsible therefor.*

*Id.*; N.M. Stat. § 37-2-1 (1978).[11]

---

[10] In this section I will refer to the deceased would-be plaintiff on whose behalf a personal representative seeks to
assert a claim as simply "the plaintiff," rather than the would-be or putative plaintiff.
[11] I note that "in addition to the causes of action listed in the survival statute, under *Rodgers* [*v. Ferguson*, 89 N.M.
688, 556 P.2d 844, 846 (Ct. App. 1976)], personal injury claims arising from negligence may survive the death of the
would-be plaintiff." *Oliveros*, 449 F.3d at 1094. I construe Plaintiffs' instant claims as arising from allegedly
intentional conduct, rather than mere negligence, and so this exception does not apply.

Thus, different outcomes emerge depending on whether the injured person or alleged wrongdoer dies before filing suit. *Id.* Essentially, the statute envisions that the *defendant/wrongdoer's death* would *not* extinguish an intentional tort claim. *Id.*  On the other hand, the statute noticeably leaves out intentional torts in the list of claims which *do survive* the death of the *plaintiff*. *Id.*

The Tenth Circuit proceeded on to analyze whether intentional tort claims survive the plaintiff's death when the death is unrelated to the intentional tort. *Id.* Since the New Mexico Supreme Court has not decided this issue, the Tenth Circuit predicted that "New Mexico courts would apply the common law rule and conclude that intentional tort claims *do not survive the injured party's unrelated death*." *Id.* (emphasis added). The court reasoned that the § 1983 excessive force and unreasonable seizure claims at issue were necessarily based on the officers' intentional conduct. *Id.* at 1095. Thus, § 1983 claims are analogous to intentional tort claims *Id.* The conclusion is, therefore, that § 1983 claims do not survive the plaintiff's death when the death is not related to the intentional tort. In other words, the plaintiff's unrelated death extinguishes any § 1983 claims the plaintiff could have brought. The plaintiff's personal representative cannot later bring those § 1983 claims on his behalf. *Id.* For that reason, the Tenth Circuit dismissed the personal representative's § 1983 claims in *Oliveros*. *Id.*

While this outcome may seem harsh, other New Mexico federal courts have reached the same conclusion. *See, e.g.*, *Cordero v. Froats*, No. CV 13-031 JCH/GBW, 2016 WL 7426575, at *1 (D.N.M. May 20, 2016); *Nordwall v. PHC-LAS Cruces, Inc.*, 960 F. Supp. 2d 1200, 1243 (D.N.M. 2013). Notably, in *Cordero*, police shot and killed the plaintiff after the plaintiff started running away from them in the course of a stop and investigative detention. 2016 WL 7426575, at *1. The plaintiff's personal representative brought a § 1983 claim of excessive force causing death

and an NMTCA claim of gross negligence in using force, among others. *Id.* The district judge found that the alleged deprivation of constitutional rights did not *actually cause* the plaintiff's death, despite the constitutional violations and the death being very close together in time. *Id.* at 13 ("The Court is persuaded by Sanchez's unopposed argument that causation, rather than mere temporal proximity, is required under the survivability analysis."). Thus, the personal representative could not bring the § 1983 and NMTCA claims because the plaintiff's unrelated death extinguished them, and so they were dismissed. *Id.*

Another New Mexico district court applied this survivorship rule for intentional torts in the Rehabilitation Act context. *See Nordwall*, 960 F. Supp. at 1243. That court initially expressed hesitation over the *Oliveros* prohibition on recovery for intentional torts after a plaintiff's death: "[a]nytime that the Court sees the Tenth Circuit rely on Court of Appeals of New Mexico decisions from over thirty years ago [from which to infer that intentional torts do not survive the plaintiff's unrelated death], it gives the Court pause." *Id.* at 1243. However, that court concluded that § 37-2-1's plain language "ultimately wins" and that intentional tort lawsuits end with the death of the plaintiff. *Id.* at 1244.

B.  Plaintiffs' § 1983 claims cannot be brought after Mr. Contreras's death.

Given the established precedent on this point, this Court must find that none of Plaintiffs' § 1983 claims survived Mr. Contreras's death. The § 1983 violations alleged are based on Det. Chavez' and Raymond Brown's purportedly intentional conduct.  Thus, under § 37-2-1 those claims do not survive Mr. Contreras's death and cannot be brought after his death, even by Mr. Contreras's personal representative. While I note Plaintiffs' position that Defendant's alleged

conduct caused Mr. Contreras's death, the *Cordero* case is instructive and forecloses that argument.

In *Cordero*, the plaintiff's estate had a much stronger argument that the alleged constitutional violations caused the plaintiff's death because the police shot him very soon after they detained him. *See Cordero*, 2016 WL 7426575, at *1. Here, the connection between the alleged unconstitutional acts and Mr. Contreras's death is much more attenuated than in *Cordero*. Plaintiffs allege that Mr. Contreras's wrongful arrest and prosecution led to him becoming tangled up in an undercover operation resulting in his murder, which was then possibly covered up as a suicide. *See* [Doc. 15] at 19. This took place over the course of months. *Id.* Thus, it cannot be plausibly said that Defendant's acts in fact *caused* Mr. Contreras tragic and premature death. Therefore Plaintiffs' § 1983 claims must be dismissed.

**III.    Allowing Plaintiffs to amend the complaint again would be futile.**

A court may deny leave to amend if amendment would be futile. *Foman*, 371 U.S. at 182; *Curley*, 246 F.3d at 1284. Amendment is futile if the pleading "as amended, would be subject to dismissal." *Fields*, 753 F.3d at 1012. The Tenth Circuit has directed district courts to grant leave to amend "when doing so would yield a meritorious claim." *Curley*, 246 F.3d at 1284. The decision whether to grant leave to amend is left to the discretion of the district court. *See, e.g., Frank.*, 3 F.3d at 1365; *Foman*, 371 U.S. at 182.

I find that allowing Plaintiffs to amend the Amended Complaint once again would be futile because it would not result in any meritorious claims. I have engaged in the lengthy analysis above to show Plaintiffs why their claims cannot succeed even if they were granted leave to correct certain procedural defects. For example, I note that the probate court appointed Jessica Smith, Mr.

Contreras's mother, as personal representative of his estate. [Doc. 25] at 3. However, even if I granted Plaintiffs' "Motion for Appointment of Personal Representative" substituting Jessica Smith as personal representative of Mr. Contreras's estate and the proper real party in interest, that substitution would not cure the statute of limitations or survivorship issues discussed above. While I recognize that Mr. Contreras's tragic death has caused Plaintiffs to expend much time and effort in trying to obtain records and information, I cannot allow these considerations to undercut the principles of law which I am required to apply.

## CONCLUSION

In sum, I find that Plaintiffs fail to state a claim upon which relief may be granted because the state law tort claims are barred by the statute of limitations and the § 1983 claims do not survive Mr. Contreras's death and cannot be brought by his personal representative.

**IT IS THEREFORE RESPECTFULLY RECOMMENDED** that Defendant's Motion to Dismiss [Doc. 17] be **GRANTED** and the Amended Complaint [Doc. 15] **DISMISSED**.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.** *See* **D.N.M.LR-Civ. 10.1. If no objections are filed, no appellate review will be allowed.**

---

**STEPHAN M. VIDMAR**
**United States Magistrate Judge**